IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (DUBUQUE) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 21-CR-1036-CJW |
| | ) | |
| Plaintiff, | ) | **INFORMATION** |
| | ) | |
| vs. | ) | **Count 1** |
| | ) | 21 U.S.C. § 846 |
| JON STIDHAM, | ) | Conspiracy to Dispense or |
| | ) | Distribute a Controlled Substance |
| Defendant. | ) | by Means of the Internet |
| | ) | |
| | ) | **Count 2** |
| | ) | |
| | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy to Introduce |
| | ) | Misbranded Drugs Into Interstate |
| | ) | Commerce and Commit Mail Fraud |
| | ) | |
| | ) | **Title 21 Forfeiture Allegation** |
| | ) | |
| | ) | **Title 18 Forfeiture Allegation** |
| | ) | |

The United States Attorney charges:

## Count 1
### Conspiracy to Distribute a Controlled Substance

Between on or about 2011, and continuing to on or about October 2018, in the Northern District of Iowa and elsewhere, defendant JON STIDHAM did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown to the United States, to deliver, distribute or dispense a mixture or substance containing a detectable amount of methyltestosterone, a Schedule III controlled substance by means of the Internet without a valid prescription and

without complying with federal and Iowa licensing requirements, in violation of Title 21, United States Code, Sections 841(h), 841(a)(1) and (b)(1)(E)(i).

This was in violation of Title 21, United States Code, Section 846.

## **Drug Related Forfeiture Allegation**

1. The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

2. Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Section 841, the defendant, JON STIDHAM, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense, including, but not limited to the following:

$324,303 in United States Currency

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

### Count 2
**Conspiracy to Introduce Misbranded Drugs Into Interstate Commerce and Commit Mail Fraud**

Between on or about 2011, and continuing to on or about October 2018, in the Northern District of Iowa and elsewhere, defendant JON STIDHAM did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown to the United States:

(a) with the intent to defraud or mislead to introduce and deliver into interstate commerce misbranded prescription drugs, Adequan Canine; Albon Oral Suspension; Amiglyde V; Amoxicillin Tri+Clav Potassium; Amoxiclav; Animax Ointment; Banamine; Baytril; Bravecto; Bute Tabs Phenylbutazone; Cerenia Inject; Clavamox; Clindamycin; Comfortis Tab; Depo-Medrol; Deramaxx Tablets; Derma-Vet; Dexamethasone; Enrofloxacin; Entederm; Flunixin Meglumine (Banamine); Gentizol Ointment; Heartgard; Interceptor Plus; Ketofen; Lactated Ringer; Legend; Lidocaine HCL; Marquis Oral Paste; Meloxicam; NEO 325 Sol Pwdr; NEO-Predef w/Tet Pwd; Neovet; Nexgard; Orbax Oral Susp.; Otomax Oint; Oxytocin; Panacur Susp; Penicillian; Prednisone; Previcox; Rimadyl; Saliz -furosemide; Sodium Chloride; Tetramed; Thyro Tabs; Trazodone; Tresaderm; Trifexis; Tylan; Vetprofen;

2

Vetsulin; and Viceton, in violation of 21 U.S.C. §§ 331(a), 333(a)(2), 353(b)(1) and 353(f)(1); and

(b) with intent to defraud defendant did devise and intend to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations and for the purpose of executing or attempting to execute the scheme and artifice to defraud and deprive, defendant knowingly caused to be delivered by Postal Service or any private or commercial interstate carrier, and deposited or caused to be deposited any matter or thing whatever to be sent or delivered by Postal Service or any private or commercial interstate carrier, specifically misbranded drugs and the bills for misbranded drugs in violation of 18 U.S.C. § 1341;

and one or more persons did any act to effect the object of the conspiracy, as set out below.

### Manner and Means of the Conspiracy

1. During the entire course of the conspiracy, defendant operated a business under the name "Kennel Supply LLC."

2. Defendant, through Kennel Supply LLC, was in the business of selling a variety of items used for operation of kennels and the care of farm animals at the brick and mortar location and on the Internet.

3. Defendant, through Kennel Supply LLC, was in the business of selling a variety of items used for operation of kennels and the care of farm animals at

the brick and mortar location and on the Internet at http://www.kennelsupplyllc.com/ including food, controlled substances and non-controlled prescription drugs-that require a prescription to lawfully dispense to the ultimate user. The act of dispensing prescription drugs intended for use by animals without a valid prescription of a practitioner licensed by law to administer such drug is an act which caused the drug to become misbranded while held for sale. 21 U.S.C. § 353(f)(1)(C). Furthermore, a drug is deemed to be misbranded unless its labeling contained adequate directions for use, which was defined by regulation as directions under which a layman can use a drug safely and for the purposes for which it was intended. 21 U.S.C. § 352(f); 21 C.F.R. § 201.5. Directions under which a layperson could use a prescription drug safely could not be written because such drugs could only be used safely, if at all, at the direction, and under the supervision, of a licensed medical practitioner.

4. Neither defendant nor Kennel Supply LLC has ever been an authorized pharmacy in the State of Iowa to handle, store or dispense any prescription drugs, and neither defendant nor Kennel Supply LLC has ever been registered with the Drug Enforcement Administration ("DEA") to lawfully handle, store or dispense any controlled substance. Neither defendant nor Kennel Supply LLC has ever been licensed as a wholesaler or limited distributor of non-controlled prescription medications.

5. Defendant and others utilized the DEA registration and Kansas Veterinary license of Dr. S. to order and acquire prescription drugs from a wholesaler without any examination of the animals involved. These misbranded drugs were shipped to defendant utilizing the U.S. Mail or other private or commercial interstate carrier.

6. Defendant then resold the misbranded drugs to kennel owners and individuals in the Northern District of Iowa and throughout the United States. Individuals purchasing these items paid an increased price than they would otherwise pay for the controlled and non-controlled prescription medications if they had simply had a legitimate prescription filled by a retail pharmacy.

7. As part of his scheme, defendant represented that the alleged involvement of Dr. S., a veterinarian, allowed defendant and his customers to avoid the need for a separate examination of the animal to establish a valid veterinarian-client-patient relationship. *See*, https://www.avma.org/resources-tools/avma-policies/veterinarian-client-patient-relationship. Thus, under the Controlled Substances Act and Food Drug and Cosmetics Act the regulatory system was breached and the necessity of the dispensed medication could not be properly established.

8. In total defendant spent $121,804.77 to acquire 50 different types of non-controlled prescription drugs during the course of the misbranding and mail fraud conspiracy. Records seized from defendant's business show defendant sold the prescription drugs for approximately $203,207 in net proceeds. Of

total defendant spent acquiring prescription drugs from P-M, prescription medications valued by P-M at $74,335.18 were sent to defendant's conspirator in Kansas with no involvement of Dr. S.

## Overt Acts

1. In 2015, Defendant was informed by the Iowa Board of Pharmacy that his sale of prescription drugs and controlled substances was not lawful, and the board provided defendant with instructions on how to lawfully sell these prescription drugs and controlled substances, and the licenses defendant needed to possess to lawfully engage in the storage and dispensing of prescription drugs and controlled substances. Despite this information, from 2015 through 2018, defendant continued to sell controlled substances and prescription drugs through his business while failing to implement the Iowa Board of Pharmacy's procedures.

2. On April 22, 2016, P-M, a licensed supplier of prescription animal drugs, informed defendant that the medications had to be shipped directly to Dr. S. in Kansas in order to comply with federal regulations. Subsequently, without the knowledge of Dr. S., defendant provided Dr. S.'s DEA registration and Kansas veterinary license to establish a new account with P-M. Defendant used the address of one of defendant's family members, a co-conspirator or co-schemer, in Kansas as Dr. S.'s mailing address to receive shipments of prescription medications. Defendant also used his own credit card as the method of payment on this account.

3. In 2016 and after, Defendant's family member/co-conspirator received the prescription drugs from P-M that were shipped by U.S. Mail or other carrier to the address provided to P-M by defendant. Defendant's family member/co-conspirator then arranged for delivery of the packages addressed to Dr. S. to be delivered to or picked up by defendant.

4. On October 17, 2018, when law enforcement officers executed a search warrant, defendant was in possession of: (1) various quantities of misbranded prescription animal drugs, including Interceptor Plus, Sulfamethoxazole, Trimethoprim, Gentizol, Otomax, Butatron and Prednisone; (2) five prescriptions that had been pre-signed by Dr. S. and contained no other information; (3) eight blank prescriptions; (4) a copy of Dr. S.'s DEA Controlled Substance Registration Certificate; and (5) a copy of Dr. S's Kansas veterinary license.

This was in violation of 18 USC 371, 1341, 21 U.S.C. §§ 331(a), 333(a)(2), 353(b)(1) and 353(f)(1).

## Fraud-Related Forfeiture Allegation

1. The allegations contained in Count 2 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to

violate Title 18 United States Code, Section 1341 (mail fraud) and Title 21 United States Codes, Section 331 (introduction of misbranded drugs into interstate commerce), in violation of Title 18, United States Code, Section 371, the defendant, JON STIDHAM, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation. The property to be forfeited includes, but is not limited to, the following:

$203,207 in United States Currency

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

SEAN R. BERRY
Acting United States Attorney

By: s// *Patrick J. Reinert*

PATRICK J. REINERT
Assistant United States Attorney